J^FITZSIMMONS, J.
This appeal is concentrated on the issue of the applicability of a tax assessment on the portion of green coke burned up in a coke calcining process at Reynolds Metals Company (Reynolds). The trial court held that Reynolds was due a refund of the taxes that it had paid under protest to the City of Baton Rouge, East Baton Rouge Parish and East Baton Rouge Parish School Board (City Parish). This court affirms for the following reasons.
On January 30, 1990, Reynolds filed a petition for refund of taxes, penalties and interest paid under protest to the City Parish in the sum of $2,275,717.46. Thereafter, on January 4, 1994, Reynolds sought judgment for reimbursement of the sum of $l,877,961.03.[1] It was alleged that the materials for which the tax had been imposed were either exempt or excluded from taxation by law. The suits were consolidated on April 25,1996.
The trial court did not characterize the 23 percent of the green coke as being subject to taxation. In reasons for its judgment in favor of Reynolds, the court noted that volatiles were created from the green coke only in the moment of the refining process. They were not subject to extraction; therefore, there was no market value upon which a tax could be imposed.
The City Parish listed numerous assignments of error:
1) The trial court erred in granting a refund to Reynolds.
2) The trial court erred in its failure to determine that: a) a sales tax was due on local purchases of green coke, and that a use tax was due on purchases outside of East Baton Rouge Parish when the purchase by Reynolds was for the purpose of ultimate consumption by Reynolds; and b) a sales tax was due on the portion of green coke consumed as fuel and purchased in East Baton Rouge Parish, and a use tax was due on purchases outside of East Baton Rouge Parish for those purchases of green coke utilized to provide fuel for the calcining process.
3) The trial court erred in determining the cost price of the tangible personal property subject to the use tax.
4) The trial court erred in failing to qualify David Capers as an expert witness.
5) The trial court erred: in denying the City Parish’s motion to file an amended and supplemental answer and reconven-tional demand; in denying the city parish’s motion to compel | ^discovery; in denying the motion to enlarge the number of interrogatories and for a continuance; and, in granting Reynolds’ motion for a protective order.

DAVID CAPERS’ QUALIFICATIONS

We initially address the City Parish’s assignment of error that the trial court erred in its refusal to qualify David Capers as an expert witness. Mr. Capers was a chemical engineer with direct experience in refinery operations. Reynolds *673 objected to Mr. Capers’ expertise in the field of the calcining industry. The testimony elicited from the record did not support the existence of any specialization in the details of the calcining process. City Parish failed to prove by a preponderance of the evidence that Mr. Capers’ testimony was rehable, would be scientifically' valid and that it would be applicable to the facts at hand. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 118 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court’s determination that an insufficient basis had been established to accept the witness as an expert in the calcining process comports with the law. The assignment is without merit.

THE COURT’S PROCEDURAL RULINGS

The City Parish asserts that the court erred in denying its motion to file an amended and supplemental answer, as well as various motions for additional discovery. The trial court’s rejection of the various motions for amendments and requests for additional discovery were premised on the court’s determination that the procedural devices were irrelevant to the issues in the case. This court did not find that the trial court had abused its discretion when it reviewed the matter on a writ application. Accordingly, we have already disposed of the issue raised in this assignment of error.

EVIDENCE AT TRIAL

The parties stipulated to the fact that out of every 100 tons of green coke brought to the kiln for processing, there exists a 23 percent difference (on a dry weight basis) between the green coke and the calcined coke that comes out of the kiln after it is processed. In essence, 23 percent is burned in the kiln and the afterburner.
The auditing manager and the revenue manager of the finance department of the City Parish each testified that the City Parish taxes the portion of the product consumed if it can be classified as a fuel in the process. On the other hand, both the auditing manager and the revenue manager for the City Parish agreed that if the volatiles that were created in the calcining process were only a by-product or after-product, rather than a fuel source, a taxable use did not exist.
|4It was stated by witnesses testifying on behalf of Reynolds that there existed no currently available market for the waste heat that was produced from the volatiles. Additionally, the general manager of the carbon products division of Reynolds testified that there was no market for the particulates or “fines” that were also created in the calcination process, and which comprised a portion of the 23 percent of the green coke that is lost pursuant to calcining. Contrarily, the City Parish maintained that the controverted amount was subject to taxation as a fuel source that was consumed in the calcining process, or, alternatively, a sales tax.

LEGAL APPLICATION

For guidance, we look to the most recent supreme court pronouncement involving a discussion of the viability of a use tax on a coke-on-catalyst process, which can be analogized to the instant consideration. In State v. BP Exploration & Oil, Inc., 96-0716, 96-2218 (La.1/14/97); 686 So.2d 823, the supreme court held that the use of coke-on-catalyst constitutes a taxable event that does not qualify for the reprocessing exclusion; however, because no evidence had been offered to substantiate that coke-on-catalyst possessed a reasonable market value, it was not susceptible to the use tax.
In the instant matter, the green coke was not subject to the sales tax at the time of the purchase because the entire green coke at issue was designated for further processing. La. R.S. 47:301(10)(c). In the calcining procedure, 23 percent of the former green coke was lost or reduced to waste heat. No market value was es *674 tablished for waste heat or the volatiles that were temporarily created during the process. Accordingly, it is not necessary to determine whether or not 23 percent of the green coke was utilized as a fuel in the calcining process. Irrespective of the characterization of a portion of the green coke as a fuel in the calcining process, the use tax could not be imposed due to the lack of sufficient evidence at trial to demonstrate a reasonable market value for the 23 percent portion of the green coke under dispute that became heat waste. See State v. BP Exploration & Oil, Inc., 96-0716, 96-2218, at pp. 14-16; 686 So.2d at 831. The findings of the trial court are, therefore, affirmed. Costs associated with this appeal, in the sum of $4,606.14, are assessed to the City Parish.
AFFIRMED.
GUIDRY, J., concurs.

. . The tax assessment is delineated in the petition; to wit: $1,127,026.48 in use taxes; $469,177.86 in interest; and $281,756.69 in penalty charges.